UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PAUL SAPUTO,<br><br>                     Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; and LENDINGCLUB CORPORATION,<br><br>                     Defendants. | Civil Action No.: _____<br><br>DEMAND FOR JURY TRIAL |

**PLAINTIFF'S ORIGINAL COMPLAINT**

      Plaintiff Paul Saputo ("Plaintiff"), through counsel, brings this action against defendants Experian Information Solutions, Inc. ("Experian") and LendingClub Corporation ("LendingClub") (collectively, "Defendants"), and alleges based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

**NATURE OF THE ACTION**

      1.     Plaintiff's Complaint arises from Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Plaintiff contends that Experian failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, Defendants failed to reasonably investigate consumer report information disputed by Plaintiff, and Defendants furnished inaccurate consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) includes both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

1

## JURISDICTION AND VENUE

2. The claims asserted in this complaint arise under 15 U.S.C. §§1681c, 1681e, 1681i, and 1681s-2(b) of the FCRA. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 15 U.S.C. §1681p.

3. Venue is proper in this judicial district under 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff resides in Dallas County, Texas, and qualifies as a "consumer" as that term is defined under 15 U.S.C. §1681a(c). Plaintiff is an individual.

5. Defendant Experian regularly compiles and distributes consumer credit information in exchange for monetary compensation. Therefore, Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is an Ohio corporation that regularly conducts business in this judicial district. Experian maintains a principal place of business at 475 Anton Boulevard, Costa Mesa, CA 92626.

6. Defendant LendingClub regularly provides consumer credit information to consumer reporting agencies. Therefore, LendingClub is "furnisher" of consumer credit information as that term is contemplated by 15 U.S.C § 1681s-2. LendingClub is a Delaware corporation that regularly conducts business in this judicial district. LendingClub maintains a principal place of business at 595 Market Street, Suite #200, San Francisco, CA 94105. Defendant can be served through its registered agent, CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

7. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Texas and conducted business in the State of Texas on a routine and systematic basis.

8. During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

9. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL BACKGROUND

10. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

11. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

12. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

13. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

14. Experian is one of three major consumer reporting agencies, or credit bureaus, in the United States that regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (also known as credit reports).

15. Experian's consumer reports generally contain the following information: (i) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16. Experian obtains consumer information from various sources. Some consumer information is sent directly to Experian by furnishers, and other information is independently gathered by Experian from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

17. Experian regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

18. The diligence Experian exercises in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

19. Experian's unreasonable policies, procedures and/or algorithms consistently fail to identify and update information related to bankruptcy debts as required by §1681e(b).

20. Experian knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

21. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from credit bureaus (like Experian) to make lending decisions.

22. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's consumer reports.

23. The information Experian includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

24. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

25. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

26. FICO's "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

27. Defendant knows that a consumer report indicating an account as open with an outstanding balance even after the account was discharged in bankruptcy will negatively impact a consumer's credit score and/or FICO Score.

28. Defendant knows that a consumer report indicating an account as discharged in a bankruptcy that is older than seven years, and which, therefore, may no longer be reported pursuant to 15 U.S. Code § 1681c(a), will negatively impact a consumer's credit score and/or FICO Score.

29. Defendant knows that a consumer report indicating the occurrence of a bankruptcy in any section of a consumer report, whether in the public records section, on an individual account, or otherwise, even as the bankruptcy is no longer allowed to be reported, will negatively impact a consumer's credit score and/or FICO Score.

30. Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Experian frequently reports information regarding post-bankruptcy accounts and debts based on incomplete or knowingly inaccurate information.

31. Experian routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b), despite possessing information inconsistent with the reported information, and information that establishes that the reported information is inaccurate.

32. Experian's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

33. Experian regularly publishes consumer information that conflict with information that has been provided by data furnishers, information that is already included in Experian's own credit files, information contained in public records that Experian regularly accesses, and/or information sourced through Experian's independent and voluntary efforts.

34. Experian is on continued notice of its inadequate post-bankruptcy reporting procedures, including pertaining to inaccurate account and payment statuses, and failing to verify the status of accounts even after notice from the consumer and through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a consumer bankruptcy.

**Allegations Specific to the Credit Reporting of Plaintiff**

35. Approximately seven years ago, on or about September 12, 2014, Plaintiff sought protection from creditors and a restructuring of debt pursuant to Title 11 of the U.S. Code (Case No. 3:14-bk-34439) (the "Title 11 Filing").

36. Among the debts discharged in the Title 11 Filing was $8,586 of debt existing on Plaintiff's LendingClub account, Account No. 974630X (the "Account").

37. Plaintiff lives in Dallas, Texas, with his spouse and their one-year old child. Some months ago, on or about September 2021, Plaintiff began seriously looking to obtain a mortgage loan and move from Dallas, Texas. Plaintiff had been looking to move to New Orleans, Louisiana, near his mother, for some time.

38. This move is essential for Plaintiff. Plaintiff and his wife both work full-time every workday. To do so, they entrust their child's care with a local daycare center (the "DayCare").

39. However, during the past year or so, the Covid19 pandemic ("Covid") has created difficult conditions for millions of Americans, but especially for parents and families with children; among them are Plaintiff and Plaintiff's family.

40. Specifically, the DayCare would – at random times, during ordinary workdays, and without prior notice – announce that it had closed and require that parents immediately collect their respective children.

41. Plaintiff and his spouse were forced to instantly pick up their child and find immediate alternative childcare accommodations.

42. The DayCare could and would be closed for days at a time on each occasion that one or another child tested positive for Covid.

43. Plaintiff and his spouse would, alternatively, miss important deadlines and other work commitments.

44. On multiple occasions the circumstances were so dire that Plaintiff invited and orchestrated that his mother be flown in from her home in New Orleans, Louisiana to care for their child.

45. Because the circumstances were untenable, Plaintiff and his spouse determined that a move to New Orleans, Louisiana was necessary and could not come soon enough.

46. Plaintiff knew that consumer reporting agencies were barred from reporting certain delinquencies, including Chapter 13 Bankruptcies that had fully paid payment plans, after seven years.

47. In that regard, Plaintiff had anxiously anticipated the onset of September 2021, at which time he could confidently apply for a home mortgage in the New Orleans, Louisiana home market.

48. September 2021 would mark seven years since the Title 11 Filing and two years since Plaintiff had completed all payment plan payments on or about September 25, 2019.

49. Therefore, in or about September 2021 Plaintiff submitted paperwork with a mortgage broker, New City Mortgage LLC ("NewCity"), regarding initiating and submitting applications to relevant mortgage lenders.

50. In the following days, a NewCity agent contacted Plaintiff and advised that Plaintiff's debt-to-income ratio is too high.

51. The NewCity agent also specifically advised that the existence of a required monthly payment of $349 on one LendingClub account would likely render him ineligible and doom his chances of being approved for a mortgage by relevant lenders.

52. Plaintiff reviewed his consumer reports, and, to his surprise, found that the LendingClub Account – which debt had been discharged in the Title 11 Filing – was still being reported by Experian as open with an active and outstanding balance of $8,586 and a monthly payment of $349.

53. At the time, the LendingClub debt constituted nearly all of Plaintiff's reported credit card debt, which equaled a sum totaling $8,882.

54. Unlike Experian, non-party consumer reporting agencies Trans Union and Equifax were not reporting the Account at all.

55. In or around October 13, 2021, Plaintiff submitted a dispute through his Experian account on Experian's online portal (the "First Dispute").

56. In the First Dispute, Plaintiff specifically admonished Experian for reporting the LendingClub account, advised that he did not owe a debt to LendingClub, and requested that Experian remove the Account.

57. Upon information and belief, Experian, in turn and as required by 15 U.S.C. §1681i, forwarded Plaintiff's Dispute to LendingClub.

58. Upon information and belief, LendingClub received Plaintiff's First Dispute from Experian.

9

59. On or about October 25, 2021, Plaintiff submitted a second written dispute letter to Experian by certified mail, with proof of identity and proof of address enclosed (the "Second Dispute").

60. Plaintiff's Second Dispute informed Experian that Plaintiff no longer owed any debt to LendingClub concerning the Account, and requested that the inaccurate information be removed.

61. Experian received Plaintiff's Second Dispute on or about October 29, 2021.

62. Upon information and belief, Experian, in turn and as required by 15 U.S.C. §1681i, forwarded Plaintiff's Second Dispute to LendingClub.

63. Upon information and belief, LendingClub received Plaintiff's Second Dispute from Experian.

64. On or about October 31, 2021, Experian notified Plaintiff that it had produced the results of its investigation relating to Plaintiff's dispute.

65. Upon information and belief, Experian's investigation results related to Plaintiff's First Dispute.

66. Experian's purported investigation results showed, side-by-side, Experian's pre-investigation and post-investigation reporting of the Account.

67. To Plaintiff's dismay, Experian had "corrected" its reporting to re-insert the Title 11 Filing which – Plaintiff knew – would surely exacerbate his difficulty in obtaining a mortgage loan.

68. Specifically, Experian's results showed that its pre-investigation Account reporting indicated an account "Status" of "Open/Never late."

69. Experian's results further showed that its post-investigation Account reporting indicated an account "Status" of "Discharged through Bankruptcy Chapter 13/Never late."

70. Experian was not reporting the Title 11 Filing in its Public Records section in its consumer reports dated August 25, 2021, and dated October 31, 2021.

71. Now, Experian has resurfaced and reported a Title 11 Filing that should no longer be reported.

72. 15 U.S.C § 1681c explicitly prohibits consumer reporting agencies, such as Experian, from reporting a Chapter 13 bankruptcy more than seven years after the bankruptcy's occurrence.

73. The Title 11 Filing had occurred more than seven years prior to Experian's consumer report dated October 31, 2021.

74. As such, the FCRA prohibited reporting of the Title 11 Filing in Plaintiff's consumer report, in any section thereof or for any reason.

75. 15 U.S.C § 1681c also prohibits consumer reporting agencies, such as Experian, from reporting a charged-off account more than seven years after its occurrence.

76. The Account had been discharged in the Title 11 Filing more than seven years prior to Experian's consumer report dated October 31, 2021.

77. As such, the FCRA prohibited Experian from reporting the Account in Plaintiff's consumer report, in any section thereof or for any reason.

**Defendants' Violations Harmed Plaintiff**

78. Plaintiff's Experian consumer report dated October 31, 2021, reflects three "hard inquiries" from Covius Mortgage Solution, Factual Data, and New Citi Mortgage LLC, respectively.

79. Upon information and belief, each of these reflect a mortgagor's review of Plaintiff's consumer report to determine his eligibility for mortgage loan approval.

80. Each "hard inquiry" causes harm to Plaintiff's credit score and his ability to obtain a mortgage loan.

81. Had Defendants accurately reported credit information concerning the Account, Plaintiff would not have needed to submit multiple application for mortgage loans, and his credit score would not have suffered as a result.

82. Plaintiff was not able to qualify for a mortgage despite repeated attempts, including as reflected in the aforementioned "hard inquiries."

83. Plaintiff feared that Experian's reporting and disclosing of the Title 11 Filing will severely hinder his ability to obtain a mortgage even after Experian corrected its inaccurate reporting, because mortgage lenders and brokers will already have become aware of the Title 11 Filing. Therefore, Plaintiff was distressed by the real eventuality that he will not be able to move near his mother altogether.

84. Additionally, since early 2021, Plaintiff had planned to renegotiate and restructure his substantial student loan debts and obtain more favorable interest rates.

85. Indeed, Plaintiff had been in communication with a GradFin, a company that manages and restructures student loan debt, in that regard.

86. However, Plaintiff waited to negotiate a debt restructuring until the onset of September, 2021; Plaintiff anticipated that, by September, 2021, the Title 11 Filing would no longer be appearing on his consumer reports and the viability of obtaining more favorable debt treatment would vastly increase.

87. Instead, as a direct result of the Defendants' inaccurate reporting, Plaintiff was forced to put debt restructuring on hold and forego its benefits.

88. Upon information and belief, had Defendants accurately reported credit information and not included the long-defunct Account, Plaintiff's credit score would have been higher and sufficient to qualify for a mortgage loan.

89. Upon information and belief, had Defendants accurately reported credit information and not included the long-defunct Account, Plaintiff's debt-to-income ratio would have not rendered Plaintiff ineligible to qualify for a mortgage loan.

90. Upon information and belief, had Defendants accurately reported credit information and not included the long-defunct Account, Plaintiff would not have been disqualified and rendered ineligible for a mortgage loan due to the Account's reported monthly payment.

91. Upon information and belief, had Defendants accurately reported credit information and not included reference to the Title 11 Filing, Plaintiff would have qualified for a mortgage loan in or around October 2021.

92. Instead, as a direct result of the Defendants' inaccurate reporting, Plaintiff was repeatedly denied the ability, and rendered ineligible, to obtain a mortgage loan.

93. Plaintiff was informed that he would have qualified for a mortgage loan had the Account monthly payment not been reporting.

94. Upon information and belief, recent dramatic fluctuations in home prices across the country, and particularly in the New Orleans, Louisiana, housing market that reflect the increase of demand over supply has rendered Defendant's violations even more damaging, because Plaintiff is forced to pass-up on scarce home-purchasing opportunities.

95. Plaintiff worried that by the time Defendants correct their inaccurate credit information and reporting Plaintiff may no longer be able to purchase a home near his mother due to scarcity and pricing constraints.

96. As a direct result of the Defendants' inaccurate reporting, Plaintiff suffered and suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

97. As a direct result of the Defendants' inaccurate reporting, Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, sleepless nights, reputational damage, frustration, shock, embarrassment, and anxiety.

98. Plaintiff and his spouse have been anticipating their move to New Orleans, Louisiana for many months now. Instead, Plaintiff and his spouse were forced to live with the intense and sudden disruptions that have come to define their day-to-day living.

99. After Plaintiff suffered and experienced the months-long economic and emotional damages described hereinabove, Experian corrected its credit reporting, and Plaintiff has since secured a mortgage loan.

100. Accordingly, Plaintiff is entitled to damages and turns to this Court for relief.

## COUNT I

### Against Experian for Violating 15 U.S.C. §1681c

101. Plaintiff repeats and realleges the foregoing allegations if set forth in full herein.

102. The FCRA prohibits consumer reporting agencies from "mak[ing] any consumer report" containing information concerning a delinquent or charged-off account which became delinquent or was charged-off more than seven years prior to the making of the consumer report. *See* 15 U.S.C. § 1681c(a). *See also*, *In re Wark*, 542 B.R. 522, 580 (Bankr. D. Kan. 2015).

103. In violation of Section 1681c(a), Experian made a consumer report containing credit information concerning the Account.

104. As a result of Experian's statutory violations, Plaintiff suffered actual damages as described hereinabove.

105. Experian's violations were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

106. In the alternative, Experian's violations were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

107. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT II

### Against Experian for Violating 15 U.S.C. §1681e(b)

108. Plaintiff repeats and realleges the foregoing allegations if set forth in full herein.

109. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to assure the "maximum possible accuracy" of credit reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

110. Experian failed to follow reasonable procedures to ensure maximum possible accuracy of the information reported on Plaintiff's consumer reports.

111. Experian violated 15 U.S.C. §1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and credit files it published and maintained concerning Plaintiff.

112. The FCRA also prohibits consumer reporting agencies from "mak[ing] any consumer report" containing information concerning a delinquent or charged-off account which became delinquent or was charged-off more than seven years prior to the making of the consumer report. *See* 15 U.S.C. § 1681c(a).

113. Experian's procedures failed to ensure that credit information concerning the Account not be reported or published by Experian in its consumer reports.

114. As a result of Experian's statutory violations, Plaintiff suffered actual damages as described hereinabove.

115. Experian's violations were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

116. In the alternative, Experian's violations were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

117. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT III

### Against Experian for Violating 15 U.S.C. §1681i

118. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was accurate and to correct the disputed information or delete the item from Plaintiff's consumer report and credit file.

119. As more fully alleged hereinabove, Plaintiff communicated to Experian that it was inaccurately reporting the Account because Plaintiff no longer owed the Account debt.

120. Nevertheless, Experian continued, and continues, to report and publish the inaccurate credit information.

121. Worse still, Experian "corrected" the Account information by reporting a Title 11 Filing that had occurred more than seven years prior.

122. Experian failed to conduct a reasonable investigation in response to receiving Plaintiff's First Dispute.

123. Experian violated 15 U.S.C. §1681i(a)(2)(A) by failing to provide LendingClub with all of the relevant information regarding Plaintiff and his dispute.

124. Experian violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or correct the inaccurate information upon reinvestigation.

125. As a result of Experian's statutory violations, Plaintiff suffered actual damages as described hereinabove.

126. Experian's violations were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

127. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

128. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT IV

### Against LendingClub for Violating 15 U.S.C. §1681s-2(b)

129. Plaintiff repeats and realleges the foregoing allegations if set forth in full herein.

130. After a consumer submits a dispute to a consumer reporting agency, such consumer reporting agency is required to notify the furnisher of the disputed information of the dispute.

131. Therefore, when Plaintiff submitted the Dispute to Experian, a credit bureau, Experian, in turn and as required by federal statute, notified LendingClub of Plaintiff's Dispute.

132. Upon receiving notice of a dispute from a consumer reporting agency, furnishers are required to investigate and correct the misleading information as necessary, as follows:

> After receiving notice pursuant to 15 U.S.C. § 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A)   conduct an investigation with respect to disputed information;
>
> (B)   review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2) of this title;
>
> (C)   report the results of the investigation to the consumer reporting agency; [and]
>
> (D)   if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information…
>
> 15 U.S.C. §1681s-2(b) (emphasis added).

133. LendingClub received notice of Plaintiff's Dispute to Experian and still failed to comply with its obligations under the FCRA.

134. LendingClub failed to conduct a timely and reasonable investigation of Plaintiff's Dispute after receiving notice thereof from Experian.

135. LendingClub willfully, intentionally, recklessly, and/or negligently continued to report inaccurate information to credit bureaus, including Experian.

136. Instead of removing the inaccurate information, LendingClub improperly verified that the reporting was accurate.

137. Upon information and belief, LendingClub continues to furnish such inaccurate information.

138. As a result of LendingClub's misconduct, Plaintiff has suffered actual damages as described herein.

139. LendingClub's misconduct was a direct and proximate cause of Plaintiff's damages.

140. As a result of LendingClub's statutory violations, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover statutory, actual, and punitive damages under 15 U.S.C. §1681n and §1681o.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a) An award of actual damages pursuant to 15 U.S.C. §§1681n(a)(1) or 1681o(a)(1);

(b) An award of statutory damages pursuant to 15 U.S.C. §§1681n(a)(1) and 1681o(a)(1);

(c) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. §1681n(a)(2),

(d) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and §1681o(a)(2); and

    (e)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

DATED:  January 21, 2022

    */s/ Kendra Penningroth*
Kendra Penningroth
Arizona Bar No: 037119
**The Consumer Justice Law Firm**
8245 N. 85th Way
Scottsdale, AZ 85258
E: kpenningroth@cjl.law
T: 480-626-1447

*/s/ Roger L. Mandel*
Roger L. Mandel
Texas Bar No.: 12891750
**Jeeves Mandel Law Group, P.C.**
2833 Crockett St., Ste. 135
Fort Worth, Texas 76107
Tel: (214) 253-8300
Fax: (727) 822-1499
rmandel@jeevesmandellawgroup.com